**Mitchell G. LEVIN, Plaintiff,**

v.

**UNITED STATES HUMAN RESOURCES POLICY COMMITTEE OF CITIBANK, N.A., Defendant.**

**No. 94 Civ. 6535 (WK).**

United States District Court,
S.D. New York.

June 29, 1995.

Scott Yale Auster, Carmel, NY, for plaintiff.

Michael J. Dell, Kramer, Levin, Naftalis, Nessen, Kamin & Frankel, New York City, for defendant.

### *OPINION AND ORDER*

WHITMAN KNAPP, Senior District Judge.

In August 1994, plaintiff brought this action in New York Supreme Court seeking coverage under the disability policy provided by his former employers, Citicorp and Citibank, N.A. (hereinafter "Citibank"). The complaint alleged that Citicorp and Citibank had breached that policy by denying plaintiff past, present and future long term disability benefits and stated four contractual claims. Citibank and Citicorp removed the action to this court in September 1994 on the ground that all claims asserted in the complaint were preempted by ERISA.

In a memorandum and order of February 9, 1995, we dismissed the complaint, but granted plaintiff leave to file an amended complaint asserting claims under 29 U.S.C.A. § 1133, ERISA's notice provision.[1] In March 1995 plaintiff filed an amended complaint against the United States Human Resources Policy Committee of Citibank, N.A. (hereinafter "the Committee"), a new defendant, asserting not only § 1133 claims but claims asserted in his original complaint as well. The amended complaint includes no claims against either Citibank or Citicorp. The Committee now moves to dismiss the amended complaint.

---

1. Familiarity with that Memorandum shall be presumed.

## BACKGROUND

The amended complaint alleges that in October 1989, plaintiff entered into a resignation agreement with Citibank, his employer, under which "his employment with C[itibank] would terminate on December 31, 1990 . . ." Amend.Comp. at ¶ 12. It further alleges that during September 1990 plaintiff was hospitalized for pancreatitis and had a gallbladder and gallstones surgically removed. Id. at ¶ 13. During this hospitalization, "plaintiff requested and was granted sick leave by his employer for a period of approximately two months." Id. at ¶ 14. Accordingly, "plaintiff's resignation date was extended to sometime * * * during March, 1991." Id. at ¶ 15.

The amended complaint explains that plaintiff's Multiple Sclerosis ("MS") worsened due to his pancreatitis and other related medical problems, "thereby considerably reducing plaintiff's ability to function both physically and mentally." Id. at ¶ 16. Plaintiff's position was terminated, as planned, in March 1991. Id. at ¶ 17. After the termination, "[p]laintiff's ability to function both physically and mentally continued to deteriorate" until, in August 1991, he was hospitalized for MS. Id. at ¶ 18.

The amended complaint alleges that "[a]s a result of plaintiff having been afflicted with MS, he has become permanently and totally disabled..," id. at ¶ 19, but does not specify the particular month or year in which such disability took hold. Plaintiff asserts that sometime after his August 1991 hospitalization for MS he "improve[d] to the extent that he, for the first time, realized the extent of his disability and the need to make application for [ ] Long–Term Disability Income . . ." Id. at ¶ 20. According to the amended complaint, between August and October, 1991—three to six months after plaintiff's position at Citibank was terminated—"plaintiff initiated the process by which he would make application to defendant for LTD [Long Term Disability] benefits . . ." Id. at ¶ 21.

## DISCUSSION

Defendant's motion to dismiss is based entirely on an argument that former defendants had not raised: that at the time he applied for long term disability benefits plaintiff was not a "participant" in the ERISA plan it administers ("the Plan") and therefore was entitled neither to such benefits, nor to proper notice of any denial of such benefits. For purposes of deciding the instant motion, we shall assume that plaintiff applied for the benefits in August 1991.[2]

Under the Plan, only "participants" are entitled to either short or long term disability benefits. See Def.Ex. A at 8–9. The Plan defines "participant" as "an Employee who is participating in the Plan under Article II" and defines "employee" as

a person who is performing services in the employ of an Employer in the United States and Puerto Rico * * * on a regular work schedule of at least 20 hours per week for at least six months, excluding any person performing services as an independent contractor.

Def.Ex. A at 2.

Article II, Section 3 of the Plan, entitled "Termination of Participation," provides in pertinent part that (id. at 4)

A person shall cease to be a Participant upon the happening of any of the following events:

A. the date such person ceases to be an Employee for any reason. If a person ceases to be an Employee after the first day of an absence attributable to a Disability, then such Employee shall continue to be a Participant until the occurrence of the

---

2. However, we note that defendant persuasively argues that such application was not made until January 1992. In his letter of January 20, 1992, to Pat Barlow, an officer of Citibank's Staff Relations department, plaintiff stated the following:

Obviously, I should have brought my condition to someone's attention sooner, but I had always managed to work effectively despite all that MS did to me year after year. The symptoms used to at least go in remission for a while. However, increasingly the symptoms have not gone away and have come to the point that I have since been hospitalized and given massive doses of steroids intravenously and have been and am on now oral steroids. Def.Ex. E at 2. Plaintiff enclosed with his letter one from James R. Miller, M.D., the physician treating him for MS, which discussed that illness.

earliest of the events set forth in paragraphs (i)–(iv) of Section 4 of Article IV. The Plan defines "Disability" as (id. at 1) a mental or physical condition which the Claims Administrator/Fiduciary determines:

(i) prevents the Participant from performing each and every material duty pertaining to his or her regular occupation (and after 24 consecutive months of such condition prevents the participant from engaging in each and every occupation or employment for wage or profit for which Employee is reasonably qualified by reason of education; training or experience or may be reasonably become qualified); * * *[3]

Defendant argues that plaintiff's participation in the Plan terminated in March 1991, when he ceased being an employee. By contrast, plaintiff asserts that he remained a participant after that date under the second sentence of Article II, Sec. 3, subparagraph A, which applies where "a person ceases to be an Employee after the first day of an absence attributable to a Disability."

We find defendant's position more persuasive. The amended complaint contains no allegation that plaintiff, prior to his termination, had had any absence attributable to his MS. At argument, defense counsel explained that under the severance agreement plaintiff did not work at all between early 1990 and his termination date in March 1991. That representation, which counsel for plaintiff did not challenge, is borne out by documentary evidence. Plaintiff's severance agreement with Citicorp provided that he would receive severance pay from February 1, 1990 to December 31, 1990. See Def.Ex.

B at 1. In addition, an internal Citicorp memo from Ms. Inez Janger to Ms. Jackie Williams regarding plaintiff states the following:

Due to hospitalization for surgery and an extended recovery period we need to put a hold on the timing for [plaintiff]'s Termination. We estimate that he will be able to resume his job search on November 3, 1990. This will extend his termination/resignation date until March 8, 1991.

Def.Ex. D. Accordingly, we must conclude that plaintiff's absences for at least a year prior to his termination date were attributable to his severance agreement and not to any disability.

Plaintiff further contends that even if he had not been a participant under Article II, Sec. 3, subparagraph A when he applied for long term disability benefits, we must somehow avoid that provision because it expressly contradicts Article IV, Section 2 of the Plan. The latter provision provides in pertinent part (Def.Ex. A. at 6) (emphasis supplied):

[a] participant may not receive ... Long Term Disability Income unless a claim for such benefit is received by the Claims Administrator/Fiduciary within 7 months of the first day of the Disability, *or the Participant presents proof satisfactory to the Claims Administrator/Fiduciary that because of physical or mental incapacity a claim for benefits could not have been submitted within such period of time and such proof and claim are submitted within ... 7 months ... of the end of such incapacity.*

We find no contradiction between the two Plan provisions at issue.[4] Plaintiff's inability

---

**3.** The rest of the definition simply excludes all injuries sustained by an employee while serving in the armed forces or committing a felony, or which resulted from a suicide attempt, cosmetic surgery or an intentional, self-inflicted injury.

**4.** For example, an employee stricken with a serious, usually terminal illness would cease to be an employee after his first day of absence attributable to that illness. He would thus continue to be a "participant" under Article II, Sec. 3, subparagraph A, until the earliest of the four events listed in Article IV, Sec. 4, which are (id. at 6)

(i) the date the Claims Administrator/Fiduciary determines that the Disability is terminated;

(ii) the last day of the month in which the death of the Participant occurs;

(iii) Retirement pursuant to the Participant's request;

(iv) if the Disability occurs prior to age 61, the end of the month in which the Participant attains age 65, and if the Disability occurs at or after age 61, the end of the number of months specified below after commencement of Long–Term Disability Income: * * *

Assuming that our hypothetical employee were not to recover from his illness, he would be entitled under the Plan to file a claim ten months (for example) after his first absence due to the illness, contending that due to some mental inca-

to qualify as a "participant" entitled to benefits derives from no deficiency in the Plan but from the mere fact that he had become ill while permanently absent from work pursuant to a severance agreement. Moreover, we note that the amended complaint's failure to specify the date at which plaintiff became permanently disabled from MS—in addition to the fact that the allegation of permanent disability appears directly after a discussion of plaintiff's August 1991 hospitalization for MS—supports a strong inference that such disability commenced sometime after plaintiff's termination in March 1991.

We have concluded that plaintiff was not a Plan "participant" in August 1991, when he allegedly applied for disability benefits and therefore was entitled neither to such benefits nor to notice complying with § 1133. Accordingly, we grant defendant's motion to dismiss.

## CONCLUSION

For reasons above discussed, we dismiss the complaint in its entirety.

**SO ORDERED.**

pacity he had only just realized he had been

suffering from a long term disability.